In The United States District Court
For The District Of South Carolina

James A. Fleming #150479
Pro Se Plaintiff,

V.

Medical Nurse, SCDC
William Brown, Officer SCDC
L. Williams, Officer SCDC
E. Tyler, Officer SCDC
Bernard Mckie, Warden SCDC
Robert Ward, Acting Director
In their individual, And
Official capacities,
Defendants.

Civil Action No. 9:13-CV-3377-DCN-BM

"Complaint"

## I. Jurisdiction & Venue

1.) This is a civil Action Authorized by 42 U.S.C. Section 1983 to Redress the deprivation, under color of State law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 And 1343 (A)(3). Plaintiff seeks declaratory Relief pursuant to 28 U.S.C. Section 2201 And 2202. Plaintiff claim for injunction relief are authorized by 28 U.S.C. Section 2283 And 2284 And Rule 65 of the Federal Rules of

Civil Procedure. The court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. Section 1367.

2.) The District of South Carolina is an appropriate Venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occured.

## II  Plaintiff

3) Pro Se Plaintiff, James A. Fleming, is and was at all times mentioned herein a prisoner of the state of South Carolina in the custody of the South Carolina Department of Corrections (SCDC). He is currently confined in Kirkland Correctional Institution (KCI), in Columbia, South Carolina.

## III. Defendants

4.) Roberta Ward, Defendant, was the acting Director of the State of South Carolina. He is legally responsible for the overall operation of the Department. And each institution under its jurisdiction, including Kirkland Correctional Institution.

5.) Bernard Mckie, Defendant, is the Warden of Kirkland Correctional Institution. He is legally responsible for the operation of Kirkland Correctional Institution and for the welfare of all the inmates of that prison.

6.) E. Tyler, Defendant, was the Coropal officer of Kirkland Correctional Institution, at all times mentioned in this complaint and held the rank of Coropal.

7.) L. Williams, Defendant, was the correctional officer of Kirkland Correctional

Institution, at all times mentioned in this complaint and he was legally responsible for the safety and security of all M S U inmates, including Plaintiff.

8.) William Brown, Defendant, was the correctional officer of Kirkland Correctional Institution, at all times mentioned in this complaint and he was legally responsible for the safety and security of all M S U inmates, including Plaintiff.

9.) Medical Nurse, Defendant (name unknown), was the medical nurse at Kirkland Correctional Institution, at all times mentioned in this complaint and she was legally responsible for the health and care of all M S U inmates, including Plaintiff.

## IV. Facts

10.) Pro Se Plaintiff, James A. Fleming, hereby states that his statement is true and to the best of his knowledge.

11.) That on November 26, 2011, the above mentioned Defendants in fact violate Plaintiff (8th) eighth Amendment Right.

12.) Defendant W. Brown did in fact assault Plaintiff by kicking, punching, and dispersing chemical munition in his face repeatedly, and this act was done maliciously and sadistically. Defendant Brown engaged in such acts solely for his pleasure and the purpose to cause harm and humiliation to Plaintiff.

13.) Defendant L. Williams did infact slam Plaintiff body onto the floor

4

while stepping back while Defendant Brown assault Plaintiff and the Defendant did not attempt to stop it.

14.) Defendant E. Tyler did infact jumped on top of Plaintiff while in handcuffs, belly chain, another handcuffs blackbox, shackles, and hobble chain to assist the other defendant's Brown, and Williams in the assault to cause injuries to the Plaintiff and did nothing to stop this attack.

15.) Defendant B. Mckie displayed deliberate indifference by allowing Defendant W. Brown to be positioned and assigned to work in the Maximum Security Unit (MSU) without the proper certification/training as required by MSU Policy OP-22.11, section 32. Also Defendant Mckie did not remove Defendant's L. Williams, and E. Tyler from MSU and away from Plaintiff.

16.) Defendant Medical Nurse working MSU on the date in questioned, intentionally denied and delayed Plaintiff access to medical care. Defendant Medical Nurse recklessly disregard, callous inattention, and gross negligence violated and ignored Plaintiff need for immediate medical treatment.

17.) Defendant Robert Ward failed to oversee the Defendant B. Mckie, Warden, whom he employed to operate the daily activity of Kirkland Correctional Institution (KCI), (MSU), that all security officers received the basic training as needed to work in MSU.

18.) On November 26, 2011, when Plaintiff after getting a shave in the barbershop room, at KCI, MSU of the SCDC, and while having some words with some

5

guards, he was slammed against the wall in the corridor and to the floor by officer L. Williams, while in handcuffs, belly chain — another pair of handcuffs covered by a black box, leg iron shackles, and hobble chain, and with at least Corporal E. Tyler on top of him, officer William T. Brown kicked, punched, and gassed him numerous times. Then after officer Brown was finally restrained by other officers an pulled away from him, Brown came back to where he laid and began kicking and punching him again, then gassing him by placing the can (chemical munition) against his face, before being restrained for a second time. Then while in the control room where he was ordered to go for a second time, he taunted him by beating on the glass with his hand saying over and over, "I did that to you, Fleming," and other trash talk as (I) he was escorted to medical, where Plaintiff was treated for lacerations and bruising to his face.

19.) However, treatment from these injuries were far from adequate and bordered beyond stupidity as the nurse who was assigned to MSU that day, put only sterile strips where stitches were needed. And beforehand only made an inadequate attempt to flush the chemical ammunition out of his eyes and wounds. Whereas Plaintiff complained that there was still much in these places (and much on my skin as well), and that the gas in his eyes and wounds still burned greatly. But he was only told that he could wash the chemicals out of his eyes and wounds, when he got back to his cell where he would be given a shower. However, Plaintiff said won't the strips come off under water? but the only reply he got from the nurse was, "If he wanted medical treatment it was now or never," so he let her put the strips on in hopes that they would not come off. But when he got back to his cell an given a shower, shortly after the sterile strips came off beneath the water. A short time after

6

that shower the nurse came on the wing where he lived to pass out medication to some of the other inmates who were house there, Plaintiff showed her the open wounds where the strips came off, along with the blood on the towel that he had been applying pressure to these wounds which would not stop bleeding because of the assault. She responded with a callous attitude and said that she was not putting no more sterile strips on his wounds cause she was going home. For these open wounds, he could not even get any bandages to place on them from her when asked repeatedly. Plaintiff ended up having to be creative by using tissue paper to cover the wounds and stop the bleeding. As a result it took the wounds to heal up longer an left scarring on his face. Because of the lack of medical treatment by the nurse, Plaintiff endured unbearable pain.

20.) When the incident occured, medical did not send him to the hospital, or take him to be seen by a doctor for a possible concussion that might be associated with such injuries, etc..... He had swelling to his head as well. And it wasn't until at least a day later (probably much longer) from the incident that he was seen by another nurse to clean and bandage his wounds, when Plaintiff asked if stitches were needed, she said yes, but it was too late to put any in, that it had to be done near the time of the injuries. She also commented on how neglectful things had been handled by medical.

21.) Plaintiff complained of lingering pain in his shoulder, and elbow even when he exercised to try and make both better by some kind of therapy, but resting nor therapy worked. And he complained in the days after his injuries of having bad headaches and dizziness, and he still complains of such things associated with head injuries, nothing substantial was done then, and especially

7

~~now~~ nothing is being done now. Medical only made a meager attempt in providing medical care, for example: later the Plaintiff was sent to the infirmary here at Kirkland Correctional Institution to have x-rays taken of his head. When he asked of the results, he was told that his x-rays came back okay, that he was fine, his head wasn't cracked... But he (I) thought, even if that's true, isn't that still like saying a engine is okay because the engine block isn't cracked, when there's still many working parts inside, just like in someone's head. Plaintiff thinking that the x-rays would be just the first step in seeing what was wrong with him if they came back negative — like next giving him an M R I on his head. But apparently not, since nothing's been done in this order. An M R I which can probe deeper to see those working parts, so to speak. And for the pain of his injuries and headaches, only given pills not much stronger than aspirin, if that. Plaintiff also lost his dentures (a partial plate) as he was kicked and punched in his face while lying on the floor, in which they were knocked out of his mouth from the blows, and not retrieved by the prison guards when the mess was cleaned up, and just swept up in the trash. The prison has not replaced them at all. Because of the beating Plaintiff also lost some hearing, ~~And~~ ~~~~ ~~lost~~ some vision, as well as trouble breathing out of his nose where he took some of the blows, cuts and bruising. ~~~~ See Exhibit #B,) #C

22.) There was an investigation of the assault on Plaintiff, November 26, 2011, by SCDC investigator Jim Smith, and pictures were taken of the injuries to his face. Upon the investigation Defendant William Brown who was the officer who kicked and punched Plaintiff ~~on~~ numerous times was terminated from SCDC and criminal charges were brought against Brown. The Plaintiff was seen by the investigator and (two) county prosecutors ~~~~ ~~~~ (though one

8

may have just been ~~assistant~~ assistant) for the upcoming trial against Brown, however, as far as the Plaintiff knows the ~~the~~ trial never happened, Plaintiff has heard nothing since. He ~~has~~ doesn't know if the trial had been postponed to a later date, or if officer Brown might have went ahead and plead guilty to the charges against him for a lesser sentence. Or whatever else might have ~~happened~~ happened. There was no way Plaintiff could find out final disposition of charge cause the investigator Smith never returned an answer to his letters, nor prosecutors

23.) While Plaintiff wonders why officer L. Williams was not charged with criminal charges as well, or at least terminated from his job, because he slammed Plaintiff to the ground with intent to hurt him? While officer L. Williams bragged to Plaintiff that he got out of being fired by lying to the investigator, saying that he tripped and fell is why Plaintiff hit the wall and floor so hard. If this is true, then it should be in the investigator report, which so far, SCDC has refused to turn over to him. Plaintiff would not know this unless Defendant L. Williams did in fact ~~to~~ lie during his report and bragged about it, if indeed it is in the report. Plaintiff has had trouble with Defendant Williams before and after this incident such as trash talking, and pushing Plaintiff from behind while in full full restraints, trying to provoke him, and other physical stuff.

24.) In an attempt to cover-up the incident the Defendants made false reports to bring institutional charges ~~against~~ against Plaintiff (See Exhibits D-1, D-2.) During the hearing he was found guilty even as officer Hudson came forward to state on record that she had to pull officer Brown away from Plaintiff while no one else did nothing. As a result, Plaintiff loss goodtime credit which increased

9

his prison sentence, not to mention loss of privileges such as telephone, and visitation for a whole year an can not be restored.

25.) Thus, the Department of Corrections has been down right indifferent to Plaintiff concerning the incident. Whether not reinstating his goodtime, medical treatment, or informing him of the outcome of the charge against the guard in the incident. While the Warden of the prison bears some responsibility, if not more than some, not only in disciplining his officers but making sure they are trained properly. Also the Warden has set a poor example himself in being indifferent towards the Plaintiff. In the years Plaintiff has been here at the prison Warden Mckie has took it upon himself to break laws and prison policy. For example: when Plaintiff has been stripped out and things taken from his cell, he has took it upon himself, for retributional reasons, to break prison policy in keeping him stripped out with nothing even to sleep on for even months longer than the three or seven days allowed by policy. Having even taken the small amount of time Plaintiff's allowed out of his cell daily for recreational purposes, for retributional reasons as well. And in the past when Plaintiff's been disciplined by the Disciplinary Hearing Officer by guidelines set forth, the Warden has come forth making the punishment more severe. He and Plaintiff have had history. The Warden's behavior, of course, having caused more problems between Plaintiff and officers who are ordered to enforce such things. Furthermore giving them a greenlight to do what they like to him if they dislike him. This assault of November 26, 2011, is not the first time this has happened, just the first time another officer has came forward. Warden Mckie, and Director Ward bears the responsibility to ensure the safety of both guards and inmates alike. The buck stops at Defendant R. Ward, Director.

## V. Exhaustion of legal Remedies

26.) Plaintiff, James A. Fleming, used the prison grievance procedure available at Kirkland Correctional Institution. On December 5, 2011, Plaintiff presented the facts relating to this complaint. On December 15, 2011, Plaintiff was sent grievance response informing him that complaint for filing was forwarded to the Division of Investigation (DOI) due to allegation. Plaintiff has never received disposition from Defendant's as of this date. The Defendant's own SCDC policy "Inmate Grievance System," GA-01-12 states that "the most a grievance can go unanswered from beginning to end is a total of 261 days." Defendants violated their own policy which force Plaintiff to utilize his constitutional Avenue give this court exclusive jurisdiction to hear complaint. (See exhibit #A)

## VI. Legal Claims

27.) Plaintiff, James A. Fleming, reallege and incorporate by reference paragraphs 1-26.

28.) The Plaintiff facts portion of this complaint sufficiently set forth underlying facts to show that the Defendant's "acted under color of state law," to deprive the Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States. Plaintiff also state that the Defendant's caused him emotional, mental, and physical distress.

29.) The claims in the Plaintiff complaint against the individual Defendant's are in essence an assertion that each of them failed in the performance of an official duty in providing him with the protection against "cruel

11

and unusual punishment," Under the Federal Constitution Eighth Amendment Rights as it relates to him.

30.) The Eighth Amendment protects Plaintiff against "cruel and unusual punishment," not only in sentencing, but also in what happens in prison, as to conditions of confinement, such as assault and abuses by officers. Prisoner's despite their conviction and confinement, do not forfeit all constitutional Rights, see Bell v. Wolfish, 441 U.S. 520. Prison walls do not form a barrier separating prison inmates from the protection of the constitution, Turner v. Safley 10, 7 S. c t 2259.

31.) The named Defendant's subjected the Plaintiff to severe punishment for the purpose to inflict harm. Lesser more adequate punishment could have been used, if Plaintiff was ~~already~~ indeed acting out. The physical assault was not wanton when Plaintiff was already in full restraints, the Defendants could have easily returned him to his cell. Thus, the punishment was inflicted, unnecessary, and therefore excessive. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. at 2742-47 (1972). See also Hudson v. McMillan U.S. (1992).

32.) Lastly, the Plaintiff argued that because of Defendant Medical Nurse, deliberate indifference to treat his injuries that this also entitles him protection against "cruel and unusual punishment," as laid out in Estelle v. Gamble, 429 U.S. 97, 97 S, Ct, 285 (1976), and the Eighth Amendment of the U.S. Constitution.

33.) Also Medical Nurse denied and deprived Plaintiff need to see a doctor

12

for immediate stitches to his face that caused an irregular scarring was neglectful, and indifference to the physical pain that he suffered to his open wounds when chemical ammunition was disperse. (See cases <u>Ramsey</u> v. <u>Ciccone</u>, 310 F. Supp. 600, <u>Brown</u> v. <u>Hughes</u>, 894 F. 2d 1533, and <u>Tomarkin</u> v. <u>Ward</u>, 534 F. Supp. 1224.)

34) Each Defendant acted under color of state law while violating Plaintiff protected rights. The Plaintiff objects to any legal conclusions that the Defendants are barred by the Eleventh Amendment and the doctrine of "Sovereign Immunity." all of the Defendant's action were ministerial acts which they perform contrary to their duties. They are not immune from suit under the doctrine of "Sovereign Immunity," <u>McIntyre</u> v. <u>Pontee</u>, 784 F. 2d 566.

35. The Plaintiff further states that the Defendants are not entitled to qualified immunity in that the Defendants' actions and inactions of denying and depriving the Plaintiff of his Constitutional rights clearly established within the meaning of <u>Harlow</u> v. <u>Fritzgerald</u>, 102 S.Ct. 2727. In that any reasonable official would have know that their action violated the Plaintiff. For it is in their own policy's, rules, regulations, and part of their job description, in light of the law at the time the Defendant's was and is required to provide Plaintiff with due process protection. <u>Anderson</u> v. <u>Creighton</u>, 107 S.Ct. 3034.

36. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein, Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants' unless this court grants



the declaratory and injunctive relief which Plaintiff seeks.

## VII.   Prayer For Relief

37.) Wherefore, Plaintiff, James A. Fleming, respectfully pray that this court enter judgement granting Plaintiff:

A declaration that the acts and omissions described herein violated Plaintiff's right under the Constitution and laws of the United States.

38.) Compensatory damages in the amount of $100,000.00 dollars against each Defendant jointly and severly.

39.) Punitive damages in the amount of $100,000.00 dollars against each Defendant.

40.) A jury trial on all issues triable by jury.

41.) Plaintiff cost in this suit.

42.) Any additional relief this court deems just, proper, and equitable.

Dated: November 22, 2013

Respectfully Submitted

S/ *James Fleming*
Pro Se Plaintiff
James A. Fleming #450479
Kirkland Correctional Institution
M S U
4344 Broad River Road
Columbia, South Carolina 29210

Verification:

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Columbia, South Carolina on November 22, 2013

James Fleming
Signature